# UNITED STATES DISTRICT COURT
# PHOENIX, ARIZONA

CV23-02603-PHX-DLR--DMF

C. Joe Schroder
    Plaintiff

Brietta's Buttons, Lori, Shirt Shop & DOES ET. AL.
    Defendants

CASE NUMBER _____

☑ Jury Demand

☒ FILED   ___ LODGED
___ RECEIVED   ___ COPY

DEC 1 4 2023

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

## CIVIL SUIT

1. The jurisdiction is diversity as both defendant & Plaintiff are citizens of different states & the amount at stake is above $75,000. Also, there's Fed. questions of law, that pertains to unlawful use of Trademarks (TM), protected work & Sherman Act issues.
   ☑ Diversity    ☑ Federal question

2. The Plaintiff has an RV in residence at Phoenix, Arizona address & is a Phoenix resident with Arizona ID that was issued in 2016.

   C. Joe Schroder
   14245 South 48TH Street
   Phoenix, AZ 85044
   ☑ Permanent Residence

   C. Joe Schroder
   100 N. Lamar Street
   Fort Worth, TX 76196
   ☑ Current Temp location

3. Defendants
   Brietta's Buttons & owner Lori
       Morningside Drive
   Canton, MI.
   Phone Number _____ unknown
   Email _____ unknown

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE _LRCivP 5.4_
(Rule Number/Section)

EXAMPLE 22

FILE COPY

DOCUMENT A1

FORM: SO-00451
Rev: 1/99

CENTER    FORM: SO-00451
          Rev: 1/99

A COPY OF THE INCIDENT REPORT WAS DELIVERED TO THE INMATE:
BY: _____
DATE: _____ TIME: _____
A HEARING WILL BE HELD ON THE ALLEGED VIOLATION(S).

INCIDENT: I-V-3
IDENT: 4-7-04  TIME: 1635
e/[illegible]Kal, 2 MSLCC

(LIST NAMES&DOCKET OR EMP. #)
J, SUPERVISORS, LAW LIBRARY
ORDINATOR, SOCIAL SERVICES ※
LAUNDRY, REC ROOM, KITCHEN ※
SHEET, TRANSPORT, VISITATION ※
, LOG BOOK, JOF, SPECIAL
MANAGER

Note ※ words, Words within the brackets area are from a different blank form! Thus, altered incident report!

to be in Lockdown mate is now placed [illegible] privileges (dependent)

Note bracket area & attempt to change signature report 0361 to non-Signature report via altered paper 0067.

WRIST BAND APPLIED BY
x _____ To Door by
Dep. Eifert #235

0067

[signature] MSLCC

---

A COPY OF THE INCIDENT REPOR[T]
DELIVERED TO THE INMATE:
_____ TIME: _____
HEARING WILL BE HELD ON THE
[ALLE]GED VIOLATION(S).

I-V-3
7-04  TIME: 1635
2 MSLCC

DOCKET OR EMP. #)
[SUPERV]ISORS, LAW LIBRARY
[COORDINATO]R, SOCIAL SERVICES ※
[LAUNDRY,] REC ROOM, KITCHEN ※
[SHEET, TR]ANSPORT, VISITATION ※
[LOG BOO]K, JOF, SPECIAL

be in Lockdown
is now placed
[pri]vileges (dependent)

ST BAND
[APP]LIED To Door by
ep. Eifert #235

0361

[signature] MSLCC

4. STATEMENT OF CLAIM

The Plaintiffs' '22 & '23 deferred salary cannot be paid now because of the tort acts of defendants that now include theft, interuption of shirt revenue for 12 weeks now as Plaintiff was scaling up with 10 workers, unlimited temp. help available from temp worker services & two LLC entities to compliment efforts of shirt revenue. Any & All additional damages claim pertaining to the LLC's that tax through with income or loss to the Plaintiff shall be attached to above suit via amendment as soon as said numbers are available.

There are 555,000 plus UM Alum. & over 110,000 fill the stadium each home Saturday (7 in 2023). Suffice it to say that the market for UM football shirts in #1 ranked season is well over 1 million avid football fans. With exclusive Trademarked (TM) creative shirts, defendant cost Plaintiff payment of multiple years deferred salary & 4X to 7X return on shirt inventory that was preorder sought at 10,000 shirts/agreement. Twelve weeks of $6500 on up escalating revenue (not including Nascar, Baseball, Basketball, Hockey, & NFL events to be calculated & added via amendment when numbers are available) of about $78,000 was & is ongoing cost of the torts of defendant, with more costs detailed beneath.

It commences as a new client relationship gone very bad & the defendants desire to capitalize illegally & anticompetitively on the Plaintiff (at expense of salary & bonuses that have been previously deferred & are now due to be paid in 2023) via the following: breach of contract, theft of T-shirt inventory, libeling, slandering, & defamation of character culminating in total revenue losses of at least $400,000 & as much as $1.5 million. Fan

based market research for the 2023 season is not yet available, yet shall be within days. In addition to MI, Plaintiff has done shirts & events for Albama, Georgia & Texas & all 4 teams are now in "College Football Playoff". A boon for the Plaintiff.

The 100 shirt order had so many "Red Flags" that Plaintiff cancelled, near cancelled, & barely accepted the finishing of defendants filling order as "middleperson" only & not a producer. Plaintiff could of guessed on one Tuesday in late June or early July '23 at 6pm that defendant was a problem when the owner of Brietta's Buttons & defendant Lori told the Plaintiff, "I've started drinking already," meaning not recreational but problem drinking as defendant was drinking alone. Several days earlier defendants truck had broken down on way home from Council Bluffs, IA. so she, "really needed shirt order to help pay for things." The defendant said she "couldn't work on the order because she wasn't at her office & Plaintiff said, "it's 2023 aren't you in your office any place? I'm in my office everywhere I go." The defendant was given 11 to 12 days lead time on whats a standard 7 day lead time in industry. Then was unreasonable about making the deadline with 7 days left to go, pointing to completely unstable person & a bad business owner. Certainly the drinking is why over 400 texts, emails, & calls were necessary to get a simple 2 ink color, 3 shirt color, 100 shirt order complete. It's obvious defendant has memory loss from excessive daily drinking. A nightmare scenario occupying 35 hours or more of Plaintiffs valuable work hours. At 25-30 hours cancelling the order means losing the work hours, doing a new order, & instead employing the theory of "sunk cost" on work hours Plaintiff figured why not finish order & get the $6500 worth of revenue from 100 shirt order. Plaintiff knew the producer was a Ypsilanti, MI shirt shop,

thus knowing product was coming from someone else Plaintiff felt like things could be alright.

The defendant couldn't deliver order herself thus Plaintiff & one worker met defendants friends (older couple) in their personal vehicle & those workers stole 4 shirts from 100 shirt order as Plaintiff & coworker counted & worked 10am to 6pm at coffee shop, on camera, & didn't hide any shirts as defendant tried to claim. Never before has a 100 shirt order been shy shirts besides the one occasion when a producer made up a 1 shirt deficiency. The defendant then tried to ruin the reputation of Plaintiff so shirt orders would be hard to acheive. The defendant instructed the two "friends" (a.k.a. delivery workers) a husband & wife to obtain license plate number of Plaintiff because the defendant planned on stealing back, once paid, & otherwise harming the business activities of Plaintiff. The delivery lady was so insistant on going to Plaintiffs' vehicle that her suspicious behavior & unprofessional appearance caused immediate suspicion & prompted Plaintiff to look into the entire scenario. Defendant & two delivery workers had a major falling out after the incident (because of shirt theft) & said "workers" shall be called as witnesses in the "order debacle" & be they "hostile" witnesses or "neutral" or defendant "siding" witnesses they have crucial information Plaintiff must obtain. Unfortunately, a long narrative is now necessary because of how many months problem brewed & occured.

After the unprofessional "delivery debacle" & discovery of 2 (XL) & 2 (2X) shirts gone (the husband was size 2X) the defendant was notified. The delivery workers theft was easy to identify because in boxes of neatly folded shirts the XL & 2X's

crinkled up & roughly scattered not professionally placed. In 25 (approximately) orders of "100 shirt orders" the Plaintiff never seen that before thus pointing to the culprits. Notifying defendant via phone Lori was irrate & unprofessional in reaction & accusations flew.

Plaintiff already essentially comped her additional shirts when the extra 6 shirts (making order total 106) were thrown in from defendant with price & complaint, "I don't appreciate being bullied." At that minute Plaintiff knew Lori was throwing in the 6 shirts without raising price on order. Being of "Good Character" Plaintiff told defendant, "I didn't mean they should be free," when saying, "any other supplier would do that on an order." That makes it more upsetting to be accused of "hiding 4 shirts" or "lying about the 12 defects" as Plaintiff was not fabricating. To complete order we demanded 4 shirts be provided & a discount on the 12. Plaintiff stopped payment because defendant was only offering a refund. The coffee shop manager (on phone hearing accusations) approached Plaintiff & said, "are there any shirts on the floor? The producer of "The National Championship Shirt" is on the phone & wants to know where the 4 shirts are!" Plaintiff explained to manager that "she's not the producer only a "middleperson" & I've never had a 4 shirt short order before & those 4 shirts at $5.50 each represent $22 (on invoice) & that lady is crazy." The manager understood & accepted that. Once one order was 1 shirt under 100 & producer made a new shirt.

That accusation of theft of 4 shirts ($22) harmed the reputation of Plaintiff & cost work days as the worker who witnessed it quit. Plus, the entire staff was no longer interested in donating

for a "#1 UM" T-shirt. In fact, sleeving & labeling the 100 shirt order wasn't finished & 4 shirts got water damage & became worthless because of defendants acts. It was breach & defendant slandered, libeled, & defamed character of the Plaintiff over $22 & proves completely unprofessional.

Also, the 12 defective shirts with strings, off center/tilted printing, & or collars etc leads Plaintiff to believe defendant used odd lot product order from Gildan (because she once said "oh you use odd lots" with reply, "NO, we do not!") to save money on a very low cost order. Plaintiff is "low cost" purchaser & told the defendant that upfront (plus quality was always great or if few defects - acknowledged & cured) & defendant swore she could match price per shirt of $5.35 to $5.55 range. Olive branch after olive branch was offered to defendant, yet defendant was & is an aggressive "Anticompetition" person. Meaning "she's after what you got & would do almost anything to get it." Now seeking office in a manner just like Plaintiff was. Thus, it's defendants M.O. (modus operandi) to attack & replace Plaintiff in certain shirt activity & office activity.

At the level of 10,000 shirt orders, shirt costs, on great quality shirts are $4 or less with custom printing on them & all sizes small to 5X, to match donators needs. At $40 profit per widget the defendants cost revenue (filtered through to Plaintiff salary at approximate rate of 35%) of $400,000 figured at $40/widget X 10,000 widgets. That's low side estimate since its often $59/widget on total revenue of $65 or more per widget. A single widget could be worth as much as $150 or more based on when a widget moves & the donations between that widget &

the next widget to move. For example, 7 new friends of Plaintiff, just out of college with one getting "I ♡ Baseball™" "Spring Training 2023" shirt via Venmo witnessed a gentleman see donation bucket, hear narrative, & pull $100 out of wallet & deposit saying "I don't need a T-shirt" (because they believe in cause) meaning that widget brought in over $100 as next 2 donations were $20 each plus a $5 bill donated before widget moved for $20, valuing widget at $165. Thus, 4 shirts stole from order are $660 or more net loss & 12 defectives can't be marketed (only used as uniforms) potentially costing another $1980 for a total deficit of $2640.

That entire order should have created $6900, paid bills, & bought 3 250 widget orders & "yes" Plaintiff has ordered as many as 300 & 350 previously. The 250 shirts would have generated $16,250 revenue & the scale up from there is chartable, predictable, & forecasted. The only way to recoup that (& all damages) is to place defendant & Does ET. AL. in front of a jury & & ask for punitive damages also. The above event was at Hampton Inn breakfast patio in Fort Worth near Train station & the 7 corporate newbies having a meal after a Saturday night "Divorce Party" are still friends & in communication with the Plaintiff. One of them literally said, "I just witnessed a Miracle," after the $100 donation occured. It was the 2nd $100 donator with several $50 donators thus far. If people believe in a cause they donate.

In the case of the defendants liability we have "in demand swag" for an already popular team that's now ranked #1. Plaintiff sets defendants liability for lost $400,000 in profit at 35%

(defendants liability for lost $400,000 is projected to be $140,000) of $400,000 total because other bad actors are involved. To prove out numbers, fairly simply, we divide 10,000 widgets at 16 weeks (through Jan. week 1) knowing that 555/week would need to move & that 10 workers would need to move just 55½ shirts per week or about 8 per day. Relatively easy thus the 2nd 10,000 shirts would most likely already be 25% moved.

The additional problem is that defendant is violating TM protected artwork & generating revenue with Plaintiffs' unique "foam finger #1" "NATIONAL CHAMPIONSHIP 2023" shirt, at expense of Plaintiff & deferred salaries & deferred bonuses. In 2023 emails & texts Plaintiff could prove that Plaintiff was seeking 10,000 shirt orders with inquiries to several producers, who, for business protection reasons shall remain redacted. The Plaintiff was soliciting agreements for 10,000 shirts via terms of 40 orders of 250=10,000 & equaling one agreement with "30, 60, 90 day pay," invoice terms also.

To prove to defendant we had the ability & desire to pay invoice we sent a money order (m.o.) before 30 day due date, m.o. for double that amount soon after & $100 m.o. 9/2/23 before defendants additional slander, libel, & defamation of character made operating difficult to impossible not to mention defendants thief apprentices who followed fundraising efforts & stole 2 sacks of #1 T-shirts. All m.o.'s mailed to defendant certified mail at expense of $4.35 each. The defendant got only $175 because defendant refused to cure 4 stolen shirts, 4 water damaged shirts, 12 defects & damaged Plaintiff above balance of approximately $420. Every

shirt is valuable, Plaintiff repeatedly requested 4 shirts be provided. Then defendant tried to use criminal angle to cover her breach of contract. Breach of contract occured, was not cured & the Plaintiff has endured major damages preventing bonuses/salaries from being paid for '22 & '23.

Mall kiosk locations were scouted as well as pop-up store locations in retail outlets. Scale up is alot easier during the excitement of a "playoff run," as also is recruitement & retention of talent in reference to a work force. Including ability to go through numerous temp workers at $14 to $19/hr to find gems & diamonds in the rough & retain those workers. It's almost impossible to exactly quantify the cost of the defendants torts & unlawful acts. For example, the "I ♡ Baseball™" "PLAYOFFS 2023" shirt would have been a great revenue generator that's simple to print, affordable & in demand. At only 2 colors on white T-shirt it looks like sketch beneath with other examples.



Plus, 250 shirts already in stock (now stolen) valued at $16,250 would have moved. Since defendant is one of 4 bad actors (to be sued separately for different reasons) causing Plaintiff losses, Plaintiff plans to calculate losses/event in total & figure 35% of damages from defendant. The defendants TM violations are 100% defendants liability. The goodwill & marketing exposure lost due to defendants' acts also would have filtered through to Plaintiff salaries & bonuses.

In '23 Plaintiff had 27 MI. Alum. willing to volunteer for our build day. Like a Habitat for Humanity Boots, Hardhat & Hammer work volunteer day, & defendant cost Plaintiff that work day. That ultimately costs Plaintiff the payment of this years salary due to work day & other revenue losses defendant caused. For example, 27 skilled, educated, talented workers for one full day (8 hrs) worth $6,885 figured at $255/worker/day. Plus, 27 T-shirts fundraised with, therefore a loss of $925 plus goodwill & connections of 27 well connected UM graduates. A benefit that can't be replaced & is hard to quantify, yet safe to say 4 times as valuable as work day or $27,540 value. Retirement is just a decade away & Plaintiff simply cannot give away a season of salary, a season of revenue or a season of valuable connections.

Plaintiff seeks a jury decision based on professional "numbers calculators" & or actuaries. Plaintiff intends to hire, as "expert witnesses", forensic accounting before bringing defendant to trial in front of a jury. It's safe to say defendants liability & damages for breach of contract, slander, libel, defamation of character, deceptive business practices, Trademark violations, potential bribes for influence & other bad acts yet to be revealed are well above $75,000 minimum amount at stake for a diversity jurisdiction case. Since it likely involves Sherman Anti Trust law & potential new law the Plaintiff has decided to also check the Federal Question checkbox because defendants torts & actions via contact tracing of phone, email, text, credit & debit card information is only just being discovered now.

The 12 defective shirts equal loss of approx. $1980, loss of water damaged "unsleeved" shirts equals $660, loss of a full

time $10/hr worker from that July 2023 day on, is likely equal to $10,000 (actuary numbers arriving soon) & the 4 stolen shirts equal $660 loss. The fact that Plaintiff & worker had to pickup work at coffee shop #1, go to coffee shop #2 & then coffee shop #3 & "not finish" labeling, sleeving & sealing in protective clear shirt sleeves & going 3 miles away was a cost of $500 at least. Normally Plaintiff himself could label, sleeve, & seal 100 shirt order in one long & uninterupted work day creating $6900 inventory. Yet, due to (Plaintiff seeking defendants last name) defendant the Plaintiff with a worker an entire day from 9am to 9pm could not seal 106 shirt order with probably only 79 shirts sleeved & sealed. Knowing defendant couldn't be trusted on a small 106 shirt order Plaintiff & worker had to move work sites twice.

## 5. RELIEF

Plaintiff requests number 1, that the filing be filed under seal because there is personal income, business information, proprietary information, TM secured Trademarks that Plaintiff has the right to graduate up to ® Registered Trademarks & more. The Plaintiff needs above filing filed under seal because there's sensitive proprietary information included & not included. It's already a problem that guards & other county employers cannot be trusted with sensitive financial information. That's proven since 2004, see 2011 CV 779 Schroeder vs Frazier & obvious opportunist scenarios.

For Actual & Compensatory damages sought via Ex Parte Summary Judgment the Plaintiff tabulates the numbers above in the "Statement of Claim" & many additional factors to have a figure of $225,000, roughly accurate, with a punative

damages award sought from the jury after trial. Behavior such as the defendants' should be punished to deter such actions in business in the future. That is a warning & a decision a jury must make after hearing Plaintiffs' evidence & arguments.

The Plaintiff might seek injunctive relief as more information is available every day. A fee waiver AO239 application is following above filing within 5 business days. The Plaintiff seeks the District Court Judge option & if need be shall file that 1 page selection motion form if Clerk of court provides form via mail. Plaintiff asks that clerk provide 75 subpoena forms for Pro Se defense as Pro Se defense has no means of computer access now due to previous thefts & potential current thefts. Wherefore Plaintiffs case has merit let Honorable Court & Honorable Judge grant case.

C. Joe Schroder
100 North Lamar Street
Fort Worth, Texas 76196

Respectfully,

C. Joe Schroder Pro Se

## Certificate of Service

I, C. Joe Schroder, a non-attorney swear on oath I served a copy of above civil suit for Clerk of court placing in USPS mail 12/7/23 postage prepaid in Fort Worth, Texas USA.

X _____

Chris J. Schroeder
Post Office Box 957
WHEATON, IL 60187

2004 cm 911

Chris Kochiroubos
Clerk of the 18TH Judicial Branch
Wheaton, IL 60189-0707

ADD
POSTAGE
$001.22
02 1P
0004505444  JUL 06 2009
MAILED FROM ZIP CODE 60187